**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LYNN HENNING, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| RAMACO RESOURCES, INC., RANDALL W. ATKINS, and JEREMY R. SUSSMAN, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Lynn Henning ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ramaco Resources, Inc. ("Ramaco" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ramaco; and (c) review of other publicly available information concerning Ramaco.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Ramaco securities between July 31, 2025 and October 23, 2025, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Ramaco engages in the mining, development, and sale of coal and rare earth minerals. Historically, Ramaco delt primarily in coal, but in 2025, the Company pivoted into rare earth minerals. The centerpiece of this pivot was Ramaco's Brook Mine, located in northern Wyoming. The Brook Mine was, according to the Company, believed to contain a rich and unconventional deposit of rare earth elements and critical minerals embedded in coal seams and carbonaceous clays and shales. Ramaco officially broke ground on the Brook Mine on July 11, 2025 in a heavily publicized ribbon-cutting and groundbreaking ceremony. After breaking ground, the Company repeatedly assured investors the Brook Mine was being actively mined.

3.      On October 23, 2025, at approximately 1:00 PM EST, investigative market reporter and short seller Wolfpack Research published a report alleging, among other things, that Brook

Mine is a "hoax" and a "Potemkin Mine" which was not, in fact, mined after its July groundbreaking. The report alleges that the Company "built this mine for show," and reveals that, as shown by drone footage taken three months after the mine's opening, no active work appears to have occurred. The report states that "[d]espite multiple site visits during working hours over several weeks" Wolfpack researchers "never observed the equipment mentioned in news reports or any active work."

4.     On this news, Ramaco's stock price fell $3.81, or 9.6%, to close at $36.01 per share on October 23, 2025,  on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Defendants had not commenced any significant mining activity at the Brook Mine after groundbreaking; (2) that no active work was taking place at the Brook Mine; (3) that, as a result, the Company overstated development progress at the Brook Mine; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Lynn Henning, as set forth in the accompanying certification, incorporated by reference herein, purchased Ramaco securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Ramaco is incorporated under the laws of Delaware with its principal executive offices located in Lexington, Kentucky. Ramaco's Class A common stock trades on the NASDAQ stock market under the symbol "METC."

13.     Defendant Randall W. Atkins ("Atkins") was the Company's founder, chairman and Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Jeremy R. Sussman  ("Sussman") was the Company's Chief Financial Officer ("CFO") at all relevant times.

3

15.    Defendants Atkins and Sussman (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Ramaco engages in the mining, development, and sale of coal and rare earth minerals. Historically, Ramaco delt primarily in coal, but in 2025, the Company pivoted into rare earth minerals. The centerpiece of this pivot was Ramaco's Brook Mine, located in northern Wyoming. The Brook Mine was, according to the Company, believed to contain a rich and unconventional deposit of rare earth elements and critical minerals embedded in coal seams and carbonaceous clays and shales. Ramaco officially broke ground on the Brook Mine on July 11, 2025 in a heavily publicized ribbon-cutting and groundbreaking ceremony. After breaking ground, the Company repeatedly assured investors the Brook Mine was being actively mined.

17.    Contiguous to the Brook Mine, the Company operates a carbon research facility related to the production of advanced carbon products and materials from coal, which it refers to as the "iCAM Technology Center."

**Materially False and Misleading**

**Statements Issued During the Class Period**

18.     The Class Period begins on July 31, 2025.[1]  On that day, Ramaco issued a press release announcing its financial and operating results for the second quarter of 2025. The press release touted that the Company had "***commenced mining of the Brook Mine***" and that "***Tonnage is being mined in order to provide feedstock for testing in the Company's pilot plant***." The press release further touted the Company's purported financial results. Specifically, the press release stated as follows, in relevant part:

- ***The Company commenced mining of the Brook Mine in June 2025. Tonnage is being mined in order to provide feedstock for testing in the Company's pilot plant which will optimize the ultimate processing and refinement of rare earth and critical mineral concentrates into oxides.*** Construction of this pilot scale processing facility will commence this Fall, with initial production of concentrates processed at pilot scale expected to begin in 2026.

*          *          *

- ***On Friday, July 11, Ramaco hosted a landmark ribbon cutting and groundbreaking ceremony to commemorate the opening of the Brook Mine as the first new rare earth mine in the U.S. in more than 70 years and first new coal mine in Wyoming in over 50 years***. The event featured remarks from national and state leaders including U.S. Secretary of Energy Chris Wright, Wyoming Governor Mark Gordon, U.S. Senators John Barrasso and Cynthia Lummis, U.S. Representative Harriet Hageman and former U.S. Senator and Ramaco Board member Joe Manchin.

*          *          *

This has all been a prelude to our transition now to become a critical mineral producer of not only metallurgical coal but also rare earths. Focusing on our rare earths, there are several transitional advantages and opportunities associated with the development of the ***Brook Mine:***

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

● The mine is already permitted and indeed *mining has commenced.* In July 2025, Ramaco received a 5-year mining permit renewal from the Wyoming Department of Environmental Quality.

\*                      \*                      \*

| *In thousands, except per share amounts* | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2025 | 2024 | 2025 | 2024 |
| Revenue | $ 152,959 | $ 155,315 | $ 287,615 | $ 327,991 |
| Costs and expenses | | | | |
| Cost of sales (exclusive of items shown separately below) | 134,182 | 122,770 | 248,314 | 262,483 |
| Asset retirement obligations accretion | 402 | 354 | 804 | 709 |
| Depreciation, depletion, and amortization | 17,038 | 15,879 | 34,580 | 31,098 |
| Selling, general, and administrative | 15,181 | 10,897 | 29,783 | 25,012 |
| Total costs and expenses | 166,803 | 149,900 | 313,481 | 319,302 |
| Operating (loss) income | (13,844) | 5,415 | (25,866) | 8,689 |
| Other income (expense), net | 658 | 2,522 | 1,163 | 3,151 |
| Interest expense, net | (2,818) | (1,481) | (5,048) | (2,812) |
| (Loss) income before tax | (16,004) | 6,456 | (29,751) | 9,028 |
| Income tax (benefit) expense | (2,030) | 915 | (6,320) | 1,455 |
| Net (loss) income | $ (13,974) | $ 5,541 | $ (23,431) | $ 7,573 |
| Earnings per common share | | | | |
| Basic - Class A | $ (0.29) | $ 0.08 | $ (0.48) | $ 0.08 |
| Basic - Class B | $ (0.12) | $ 0.18 | $ (0.31) | $ 0.42 |
| Diluted - Class A | $ (0.29) | $ 0.08 | $ (0.48) | $ 0.08 |
| Diluted - Class B | $ (0.12) | $ 0.18 | $ (0.31) | $ 0.41 |

\*                      \*                      \*

| *In thousands, except per-share amounts* | June 30, 2025 | December 31, 2024 |
|---|---|---|
| Assets | | |
| Current assets | | |
| Cash and cash equivalents | $ 28,130 | $ 33,009 |
| Accounts receivable | 55,943 | 73,582 |
| Inventories | 59,310 | 43,358 |
| Prepaid expenses and other | 11,527 | 17,685 |
| Total current assets | 154,910 | 167,634 |
| Property, plant, and equipment, net | 487,334 | 482,019 |
| Financing lease right-of-use assets, net | 19,683 | 12,437 |
| Advanced coal royalties | 4,884 | 4,709 |
| Other | 7,835 | 7,887 |
| Total Assets | $ 674,646 | $ 674,686 |

6

19.     On August 1, 2025, the Company hosted an earnings presentation concerning the Company's financial and operating results for the second quarter of 2025. The presentation reiterated that the Brook Mine had "opened officially in July 2025," as follows in relevant part:



## RAMACO'S BROOK MINE ADVANTAGES





20.     On August 1, 2025, the Company submitted its quarterly report for the period ended June 30, 2025 on a Form 10-Q filed with the SEC, affirming the previously reported financial results and that the Company had opened the Brook Mine on July 11, 2025. The report further purported to warn of risks with "could" or "may" negatively impact the Company, including those risks related to the Company's ability to develop the Brook Mine. Specifically the report stated as follows, in relevant part:

On July 10, 2025, the Company released a summary of the full independent Preliminary Economic Assessment ("PEA") for the Company's Brook Mine, prepared by Fluor Corporation ("Fluor"), in accordance with the U.S. Securities and Exchange Commission Regulation S-K 1300 for Mining Property Disclosure. The Fluor PEA states that the project is both commercially and technologically

feasible. Subsequently, the Company hosted a landmark ribbon-cutting and groundbreaking ceremony for the Brook Mine on July 11, 2025.

*         *         *

***Our growth prospects may be adversely affected by fluctuations in demand for, and prices of, rare earth and critical minerals.***

Changes in the level of demand for, and the market price of (including taxes and other tariffs and fees imposed upon) rare earth and critical minerals could significantly affect our growth prospects, which depend in large part on our ability to successfully develop the Brook Mine into a producing mine. As is the case with any mining asset that is not yet in commercial production, there is no assurance that we will be able to successfully develop the Brook Mine into a commercial scale mine. In particular, the prices for rare earth and critical minerals may fluctuate and are likely to be affected by numerous factors beyond our control such as interest rates, exchange rates, taxes, inflation, fluctuation in the relative value of the U.S. dollar against foreign currencies, shipping and other transportation and logistics costs, global and regional supply and demand for rare earth minerals and products, potential industry trends and the political and economic conditions of countries that produce and procure rare earth and critical minerals. In addition, a future change in the U.S. federal administration could result in changing policies and priorities, including with respect to trade policy and tariffs, taxes and regulation generally, all of which may have a detrimental impact on the demand for rare earth and critical minerals and related products.

21.    On September 18, 2025, Ramaco issued a letter to stockholders from its Chairman and Chief Executive Officer, Defendant Atkins, regarding the latest developments in the expansion and acceleration of its Brook Mine rare earth and critical minerals project. The letter detailed recent milestones including the groundbreaking of the Brook Mine and significant capital raising efforts. In particular, the letter purported to provide a "brief overview" of "activities over the past two months" at Brook Mine, including that, since groundbreaking, the Company has "two rigs now operating" there. Specifically, the shareholder letter stated as follows, in relevant part:

**Drilling Program**

***We have launched our fall drilling program at the Brook Mine, with two rigs now operating to complete 15 new holes before winter weather sets in.*** This program will expand the reach of the deposit and to continue upgrading the quality of our defined resource.

8

Of the 15 drill holes, seven are exploratory holes with six located outside the current permit boundary, targeting new zones of interest. These zones are considered highly prospective based on analogs observed within the existing permit area. If confirmed, they are expected to unlock significant expansion opportunities, both for mining and for production expansion.

The balance of the holes are infill drill holes, focused on tightening spacing, upgrading our resource classification, and further defining the high-grade trends we have already identified. Several drill holes will be converted into deep-water monitoring wells, which will allow us to collect baseline data on deeper aquifers. This is an essential step in expanding our permit to cover deeper high-grade seams, which offer strong potential for future development.

Each new drill hole will be wireline logged, cored, and sampled to ensure robust geological and petrophysical data capture. This exploration campaign marks a critical step forward in strengthening both our geologic understanding and our permitting pathway, while positioning the Brook Mine for major expansion opportunities.

22.    The above statements identified in ¶¶ 18-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Defendants had not commenced any significant mining activity at the Brook Mine after groundbreaking; (2) that no active work was taking place at the Brook Mine; (3) that, as a result, the Company overstated development progress at the Brook Mine; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

23.    On October 23, 2025, at approximately 1:00 PM EST, investigative market reporter and short seller Wolfpack Research published a report alleging, among other things, that Brook Mine is a "hoax" and a "Potemkin Mine" which was not, in fact, mined after its July groundbreaking (the "Report"). The Report alleges that the Company "built this mine for show," and reveals that, as shown by drone footage taken three months after the mine's opening, no active

work appears to have occurred. The Report states that "[d]espite multiple site visits during working hours over several weeks" Wolfpack researchers "never observed the equipment mentioned in news reports or any active work." Specifically, the Report states as follows, in relevant part:

**We Believe METC's Brook Mine Is a Hoax and Management Has Pumped the Stock with a Potemkin Mine and a Fantasy Economic Assessment**

\*                    \*                    \*

• We would say that Brook Mine is digging a worthless hole in the ground, but drone footage we have taken weekly1 reveals that METC isn't even actively digging despite a "grand opening" in mid-July where the CEO ceremoniously shoveled coal with state and federal officials. The ceremonial pile of coal which was used for the opening along with the cones that were put out for the event remain in place as seen below. The heavy machinery METC flexed at its grand opening for DOE Secretary, Chris Wright, and Fox News is nowhere to be found.



\*                    \*                    \*

**The Potemkin Mine: We Visited METC's Brook Mine Via Drone and It Appears That When the Cameras Stopped Rolling, The Digging Stopped and Everyone Went Home**

10

*"If you're trying to pump and dump, you've got to be good, you've got to be a charlatan. And Randall Atkins is a master manipulator of people and a manipulator of the press."* – Rare Earth Industry Expert

On July 11th, Fox News reported that the U.S. was opening its first rare earth mine in 70+ years as media crews and politicians descended on the Brook Mine for a grand opening filled with extensive fanfare.9 Department of Energy Secretary, Chris Wright, joined in on the event, proclaiming from the bottom of a mining pit that Brook Mine's opening was "America answering the call" to establishing rare earth independence from China. Below, we can see Atkins and Wright shoveling a pile of coal to celebrate the opening of the mine.

*          *          *

It seems that METC built this mine for show. All the sparkling clean heavy machinery shown on Fox News and the DOE's YouTube Channel has now magically disappeared from the site. The DOE's footage of the Mine, shown in the image below, shows a plethora of equipment which appears to be leased from the Wyoming Machinery Company.



*          *          *

So, what has been going on at this site after this elaborate dog and pony show? We used a drone to visit the exact mining pit where Wright and Atkins stood shoveling coal at the grand opening of the Mine. Amusingly, there is no sign of new development. In fact, they never even tidied up after the event, the cones are still out, and the ceremonial line of coal that they were all throwing about remains in place as can be seen below:



**Source:** <u>Wolfpack Drone Visits</u>

*     *     *



**Source:** Wolfpack Drone Visits[10]

 

Source: Fox News Coverage Of Brook Mine & Wolfpack Drone Videography

Despite multiple site visits during working hours over several weeks, we never observed the equipment mentioned in news reports or any active work. Seeing no mining activity, we also visited METC's iCAM Research Center multiple times.

24.     On this news, Ramaco's stock price fell $3.81, or 9.6%, to close at $36.01 per share on October 23, 2025,  on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Ramaco securities between July 31, 2025 and October 23, 2025, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Ramaco's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be

ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Ramaco shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Ramaco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ramaco; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

30.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31.     The market for Ramaco's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Ramaco's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Ramaco's securities relying upon the integrity of the market price of the Company's securities and market information relating to Ramaco, and have been damaged thereby.

32.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ramaco's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Ramaco's business, operations, and prospects as alleged herein.

33.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ramaco's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially

false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

34.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35.    During the Class Period, Plaintiff and the Class purchased Ramaco's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

36.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ramaco, their control over, and/or receipt and/or modification of Ramaco's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ramaco, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

37.     The market for Ramaco's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Ramaco's securities traded at artificially inflated prices during the Class Period.  On October 14, 2025 the Company's share price closed at a Class Period high of $54.55 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ramaco's securities and market information relating to Ramaco, and have been damaged thereby.

38.     During the Class Period, the artificial inflation of Ramaco's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ramaco's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Ramaco and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39.     At all relevant times, the market for Ramaco's securities was an efficient market for the following reasons, among others:

(a)     Ramaco shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Ramaco filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Ramaco regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Ramaco was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

40.    As a result of the foregoing, the market for Ramaco's securities promptly digested current information regarding Ramaco from all publicly available sources and reflected such information in Ramaco's share price. Under these circumstances, all purchasers of Ramaco's securities during the Class Period suffered similar injury through their purchase of Ramaco's securities at artificially inflated prices and a presumption of reliance applies.

41.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the

importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ramaco who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

43.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ramaco's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ramaco's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ramaco's financial well-being and prospects, as specified herein.

47.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ramaco's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ramaco and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly

herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ramaco's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain

21

such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ramaco's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ramaco's securities during the Class Period at artificially high prices and were damaged thereby.

51.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ramaco was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ramaco securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

54.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55.     Individual Defendants acted as controlling persons of Ramaco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.     As set forth above, Ramaco and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members

23

of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  January 30, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By: */s/ Rebecca Dawson*
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
Email:  rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz

2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Lynn Henning*

# SWORN CERTIFICATION OF PLAINTIFF

## RAMACO RESOURCES, INC. SECURITIES LITIGATION

I, Lynn Henning, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of the Complaint on my behalf.

2. I did not purchase the Ramaco Resources, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this federal securities laws.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Ramaco Resources, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

| | |
|---|---|
| 1/30/2026 | *Lynn Henning* |
| Date | Lynn Henning |

**Lynn Henning's Transactions in Ramaco Resources, Inc. (METC)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 9/6/2025 | Sold | -1,000 | $28.3500 |
| 10/20/2025 | Bought | 217 | $46.4200 |
| 10/21/2025 | Bought | 240 | $41.6600 |
| 10/22/2025 | Bought | 260 | $38.2400 |