SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

**www.skadden.com**

DIRECT DIAL
(212) 735-3902
DIRECT FAX
(917) 777-3902
EMAIL ADDRESS
ROBERT.FUMERTON@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

July 13, 2026

**<u>VIA ECF</u>**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

> RE:     *In re Ramaco Resources, Inc. Securities Litigation*, 26-cv-00846 (ER)

Dear Judge Ramos:

On behalf of Defendants Ramaco Resources, Inc. ("<u>Ramaco</u>"), Randall Atkins, Jeremy Sussman, Michael Woloschuk, and Christopher Blanchard (collectively, "<u>Defendants</u>"), we respectfully write pursuant to this Court's May 5, 2026 Order (ECF No. 40) and Your Honor's Individual Rule 2(A)(ii) to request a pre-motion conference regarding Defendants' anticipated motion to dismiss the First Amended Complaint (ECF No. 41, "<u>AC</u>") (cited as "¶__").[1]

***Background.*** Ramaco, a coal mining company, acquired the Brook Mine in Wyoming in 2022 and identified an opportunity to develop a domestic source of rare earth elements and other critical minerals ("<u>CMs</u>"), including scandium and gallium, amid national focus on reducing reliance on Chinese supply. (¶¶3-7.) To evaluate this opportunity, Ramaco engaged Fluor Corporation to prepare a Preliminary Economic Assessment ("<u>PEA</u>") and Weir International to prepare a Technical Report Summary ("<u>TRS</u>"). (¶¶ 45, 51.) Ramaco announced that it believed the PEA validated the project's feasibility, released the TRS, described pilot plant plans, and broke ground on July 11, 2025, while warning that CM pricing "may fluctuate" and there was "no assurance" Brook Mine could be developed into a commercial-scale mine. (¶¶60-64, 90-109.)

On October 23, 2025, Wolfpack Research—a short seller positioned to profit from a decline in Ramaco's stock—called the Brook Mine a "hoax," relying on anonymous "experts" to challenge Ramaco's scandium and gallium pricing and demand estimates. (¶¶151-54.) Ramaco later reported it had mined enough material for pilot operations and would defer continuous mining until full production; revised its pilot-plant timeline; and announced a proprietary processing method for CMs, an updated PEA, a reduced emphasis on scandium, and a re-designed pilot plant. (¶¶159, 190-195; 10/27/25 Press Release.) Relying on this short-seller, the AC asserts claims under

---

[1]     We reserve the right to raise additional arguments in full briefing. Defendants cite documents herein which were incorporated by the AC or are public SEC filings of which the Court may take judicial notice. *See In re Farfetch Ltd. Sec. Litig.*, 802 F. Supp. 3d 652, 674-75 (S.D.N.Y. 2025) (Ramos, J.).

Hon. Edgardo Ramos                                                                                    Page 2
July 13, 2026

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, alleging that the new processing technique shows earlier scandium estimates were unsupported. Plaintiffs' claims fail.

    ***Failure to Allege Falsity.***[2] Courts apply "close scrutiny" where, as here, a securities complaint relies on a short-seller report that "itself relies on 'confidential' or anonymous sources," *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020), because short-sellers like Wolfpack "have an obvious motive to exaggerate the infirmities of the securities in which they speculate," *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012). Plaintiffs' complaint does not survive that scrutiny for several reasons.

    <u>Price and Demand Estimates and Project Feasibility</u>. Plaintiffs fail to allege that statements about price and demand estimates or the feasibility of the Brook Mine were false; they rely only on cherry-picked purported experts who disagree with Ramaco's analyses (¶¶84, 88, 151-55). The AC alleges no facts showing that Ramaco's estimates were unsupported when made or that Ramaco did not rely on "industry sources" or pricing negotiations with potential customers (7/1/25 Press Release at 3; 10/28/25 Earnings Call at 5-6, 13); nor does it identify any internal documents or former employees to contradict those estimates. Comparing Ramaco's filings to "less than a complete set of" information cannot establish falsity. *In re China XD Plastics Co. Sec. Litig.*, 2016 WL 1241522, at *6 (S.D.N.Y. Mar. 23, 2016). And contrary to Plaintiffs' allegations (¶81), Fluor expressly "conclude[d] that the Brook Mine Rare Earth Project is both technically and economically viable." (PEA at 6.) Even if Ramaco's demand estimates for scandium ultimately proved wrong, hindsight cannot show falsity—particularly where Plaintiffs themselves call the scandium market "opaque." (¶6.) *See Ironworkers Loc. 580—Joint Funds v. Linn Energy, LLC*, 29 F. Supp. 3d 400, 428 (S.D.N.Y. 2014). Ramaco also expressly disclosed the risks Plaintiffs complain of—that market conditions for scandium and gallium could prove unfavorable and that the operational timeline could slip. (*See, e.g.*, ¶109; 8/1/25 10-Q at 33-34.) Companies need not recast speculative or unfavorable market conditions as already-realized facts, and Plaintiffs do not plead that these cautionary statements were false when made. *See Pehlivanian v. China Gerui Adv. Materials Grp. Ltd.*, 2016 WL 2859622, at *11 (S.D.N.Y. May 16, 2016) (Ramos, J.).[3] Moreover, the statements describing the PEA as "independent" (*see, e.g.*, ¶¶58, 65, 78, 80, 103) cannot support a claim because Ramaco disclosed the allegedly concealed fact: that the PEA relied on "key input data from Ramaco, including . . . product pricing" (7/10/25 8K at 12).[4]

    <u>Mining Activity and Timeline</u>. Plaintiffs plead no facts showing that mining had not commenced as represented. (¶¶64, 68, 99, 114.) Their sole support is selective short-seller drone footage taken months after the groundbreaking, which cannot establish the absence of activity anywhere across the roughly ***16,000-acre*** Brook Mine. (¶¶29, 155.) And Ramaco's acquisition of

---

[2]    Individual Defendants also cannot be held liable under Section 10(b) for statements that they did not make. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-43 (2011).

[3]    Plaintiffs' comparable-company theory fails. (¶¶73-74.) They do not plead why Ramaco's mining-energy statements were false; Ramaco disclosed the competitor's mine was "well-established" and "mined for over 50 years," unlike the "early-stage development" Brook Mine. (7/1/25 Atkins Letter at 11-12.)

[4]    Plaintiffs challenge certain statements under Regulation S-K 1300 (¶¶101-08, 140-47), but their contrary reading of the rule does not render Ramaco's good-faith compliance statement false, particularly absent any regulatory finding. *See In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 168 (S.D.N.Y. 2023). In any event, a Regulation S-K violation alone does not plead a 10(b) violation. *In re Playsafe*, 2025 WL 1003322, at *26 n.15.

Hon. Edgardo Ramos                                                              Page 3
July 13, 2026

permits while determining where to concentrate activity reflects a project underway, not one that never began. (¶¶98, 99, 132.) Ramaco also disclosed the risks Plaintiffs complain of regarding the timeline for scaled mining operations. (*See* 7/10/25 8-K at 5.)

        The Challenged Statements Are Independently Inactionable. Most challenged statements are protected forward-looking statements accompanied by cautionary language. (*See, e.g.*, ¶99 ("Construction of this pilot scale processing facility will commence this Fall")); *In re Aratana Therapeutics Inc. Sec. Litig.,* 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018). Others are opinions not alleged to have been disbelieved. (*See, e.g.*, ¶63 ("*[w]e believe that*" the PEA confirms the Brook Mine project's viability (emphasis added))); *Farfetch*, 802 F. Supp. 3d at 680. And others are, at worst, "non-actionable puffery". (*See, e.g.*, ¶115 ("Ramaco remain[s] on track for commercial oxide production in 2027")); *Farfetch*, 802 F. Supp. 3d at 678.

        ***Failure to Allege Scienter.*** Plaintiffs also fail to allege motive or recklessness. They rely on capital raises (¶9), but such generic motives are inadequate. *Farfetch*, 802 F. Supp. 3d at 682-83. The more compelling inference is that, as Ramaco disclosed, it needed capital to expand into CMs. *See id.* at 681. (*See* ¶96; 7/24/25 Prospectus Supp. at 1.) The AC lacks the usual scienter hallmarks: confidential witness allegations or insider trading by Defendants. *In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *16 (S.D.N.Y. Sep. 29, 2022) (Ramos, J.). The remaining allegations—stock sales by non-defendants (¶222), Atkins' unrelated, pre-class period conduct (¶¶223-26), and an SEC comment letter (¶¶227-28)—do not bear on any Defendant's state of mind. *See Alaska Laborer Emp'rs Ret. Fund, v. Scholastic Corp.*, 2010 WL 3910211, at *7 (S.D.N.Y. Sep. 30, 2010); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 221 (S.D.N.Y. 2008); *In re Plug Power, Inc. Sec. Litig.*, 2023 WL 5577276, at *17 (S.D.N.Y. Aug. 29, 2023) (Ramos, J.).

        The AC instead pleads fraud-by-hindsight, inferring from later reports and a changed strategy that Defendants knew their statements were false. (*See, e.g.*, ¶¶84, 127); *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *17 (S.D.N.Y. Aug. 1, 2017) (Ramos, J.). The allegations that Defendants must have known contradictory information (¶¶216-20) fail because they do not "specifically identify the reports or statements containing this information." *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 721 (S.D.N.Y. 2018) (Ramos, J.).

        ***Absence of Loss Causation.*** Plaintiffs also fail to plead loss causation, which warrants dismissal of the vast majority of claims. Plaintiffs primarily rely on the Wolfpack report as a corrective disclosure (¶¶151-56), but that report is merely a "negative characterization of previously disclosed facts"—published scandium market data, SEC filings, and Ramaco's own disclosed assumptions—and thus is insufficient. *In re Miniso Grp. Holding Ltd. Sec. Litig.*, 2024 WL 759246, at *20 (S.D.N.Y. Feb. 23, 2024) (Ramos, J.). The report's only arguably new material—drone footage—bears solely on the mining-activity statements and, for the reasons above, revealed no falsity. The alleged partial corrective disclosures fare no better. Plaintiffs cite to expert commentary published by AlphaSense, but those experts merely synthesized public data (¶¶176-89), and what's worse, Plaintiffs selectively omit the AlphaSense expert who described Ramaco's pricing assumptions as "reasonable" (¶¶176-89; 11/13/25 Expert Insights Report at 3). Moreover, Ramaco's announcement of business changes were not admissions of fraud. (¶¶157-75, 190-203); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512-13 (2d Cir. 2010).

        For at least these reasons, the AC should be dismissed in its entirety.

Hon. Edgardo Ramos                                                                    Page 4
July 13, 2026

Respectfully submitted,

*/s/ Robert A. Fumerton*

Robert A. Fumerton

cc: All counsel of record (via ECF)