LOWEY DANNENBERG

July 21, 2026

**VIA ECF**
The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

RE:    *In re Ramaco Resources, Inc. Securities Litigation*, 26-cv-00846 (ER)

Dear Judge Ramos:

Plaintiffs write in response to Defendants' July 13, 2026 letter ("Ltr.") (ECF No. 49) requesting a pre-motion conference on their anticipated motion to dismiss the First Amended Complaint (ECF No. 41, "AC").

***Background.*** Ramaco is a small company in a dying coal industry. ¶ 3, 38. When it acquired the Brook Mine in 2022, Defendants saw an opportunity to reinvent Ramaco as a domestic producer of rare earth elements (REEs). ¶¶ 3, 38-39. During the Class Period, Defendants exploited the opacity of the market for scandium to misrepresent that mining REEs at the Brook Mine was economically and technologically feasible. ¶¶ 60, 65. Defendants touted a purportedly "independent" preliminary economic assessment ("PEA") as confirmation of the feasibility of their plan to mine and sell REEs, including 65 tons of scandium annually at $3,750/kg. ¶¶ 58, 60-63, 104. Defendants also misrepresented the status of mining activity and construction of a pilot plant at the Brook Mine. E.g., ¶¶ 99, 112.

The scandium prices and demand that Defendants trumpeted were fiction; the PEA did not support them, nor did it conclude that developing Brook Mine was feasible. ¶¶ 66-68. Further, no mining activity took place for months following a ceremonial ribbon cutting on July 11, 2025. ¶ 155. Investors learned the truth through a series of disclosures, including the Wolfpack Report, numerous industry experts, drone footage showing the absence of any mining activity at the Brook Mine, and Defendants' own concessions. ¶¶ 155, 176-188, 195. Notably, the SEC sent Defendants a letter questioning the representation that the Brook Mine was "technically and economically viable." ¶ 227. In response to these disclosures, Ramaco's stock price fell precipitously. ¶ 156.

***Plaintiffs Sufficiently Allege Falsity.*** <u>Market Pricing and Demand.</u> Defendants falsely represented that their plan to sell 65 (later 180) tons of scandium annually at $3,750/kg (¶¶ 61, 70-71, 152, 158, 171) was confirmed to be feasible, supported by marketing studies (¶ 123) and conversations with a "major customer" and other potential offtakers. ¶¶ 125-26, 173-74.

These statements were knowingly and objectively false when made. ¶¶ 61-67, 152-54.[1] Fifteen experts cited in the Wolfpack Report confirmed that Ramaco's scandium pricing and

---

[1] *Ironworkers Loc. 580--Joint Funds v. Linn Energy, LLC,* 29 at 400 held that a company cannot be liable for choosing among permissible non-GAAP methodologies it accurately disclosed. But Plaintiffs here do not argue that Ramaco picked a permissible-but-suboptimal method among several equally valid options for estimating scandium price and demand. They allege that Ramaco's stated inputs (e.g., $3,750 per kg of scandium) themselves were false.

www.lowey.com

44 South Broadway, Suite 1100, White Plains, NY 10601-4459 (p) 914-997-0500 (f) 914-997-0035
One Tower Bridge, 100 Front Street, Suite 520, West Conshohocken, PA 19428 (p) 215-399-4770 (f) 610-862-9777

demand assumptions were baseless. ¶¶ 151-54, 176-88. Defendant Atkins later conceded that Defendants' conversations with prospective customers had "***not gotten to price specifics at this point***," (¶¶ 173-74) contradicting Defendants' claims that the Brook Mine's viability was confirmed. ¶¶ 60, 69-70, 87, 101.[2] Defendants ultimately abandoned a scandium-centric strategy altogether, conceding in February 2026 that reliance on scandium as the "main product driver" posed a "fundamental" risk to the project's economics. ¶¶ 190-203.[3] None of this is fraud by hindsight, as the truthfulness of Defendant's disclosures hinged on the market conditions as they existed at the time the lies were told, making this case distinguishable from *Pehlivanian v. China Gerui Adv. Materials Grp. Ltd.*, No. 14 CIV. 9443 (ER), 2016 WL 2859622, at *11 (S.D.N.Y. May 16, 2016) (Ramos, J.), where the complaints allegations were "sheer speculation."

Brook Mine Feasibility. Ramaco falsely claimed that Fluor's PEA was "independent," PEA complied with SEC Regulation S-K Subpart 1300, and concluded that the Brook Mine project was "commercially and technologically feasible." ¶¶ 58, 60, 69, 81-82, 101-02, 104. The disclosure that Fluor relied on "product pricing from Ramaco" did not cure the falsity. Ltr. at 2. Because Subpart 1300 required a "reasonable and justifiable price," 17 C.F.R. § 229.1303(b)(3)(iv), a reasonable investor would take from Defendants' statements that Fluor had independently verified the pricing. ¶¶ 65-67, 75, 105. This was false, and barely a month after Ramaco's July 2025 rollout of the PEA, the SEC itself questioned the basis for Ramaco's statement that the Brook Mine project was "technically and economically viable." ¶¶ 227-28.[4]

Mining Activity and Timeline. Ramaco misled investors about mining activity, affirming that "development of this mine is proceeding" (¶ 96); Ramaco "began full scale operations," "commenced mining in June," "remain[s] on track for oxide production in 2027" and "the [Brook Mine] opening and the initial mining stage were brought in . . . ahead of the schedule") (¶¶ 112, 114-17); Defendant Atkins repeated these representations throughout September 2025, claiming that Ramaco had "launched our fall drilling program . . .with two rigs now operating." ¶ 136.

These representations were false. Wolfpack's weekly drone footage of the site, beginning in mid-September 2025, showed no mining equipment or activity; the ground remained undisturbed, with the coal pile from the July 11 groundbreaking untouched. ¶ 155. Neither could any mining activity be underway when there was no engineering report, nor a design vendor, until October. ¶¶ 113, 116, 118, 160, 166. *See also City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 305 (S.D.N.Y. 2013) (statements about a mining operation's construction and production schedule are actionable where the company knew the schedule was unrealistic).[5]

---

[2] "[C]ourts have generally sustained pleadings where "independent factual allegations corroborated the factual allegation in the complaint drawn from short-sellers." *zCap Equity Fund LLC v. LuxUrban Hotels Inc.*, 792 F. Supp. 3d 407, 436 (S.D.N.Y. 2025), *reconsideration denied*, 2025 WL 2962772 (S.D.N.Y. Oct. 21, 2025).

[3] These aren't incomplete sets of information like the missing financial data at issue in *In re China XD Plastics Co. Sec. Litig.*, 14–CV–05308 (GBD), 2016 WL 1241522, at *6 (S.D.N.Y. Mar. 23, 2016), but Defendants' own admissions, multiple uncontracted experts, the SEC's own view, and Ramaco's own shift away from scandium.

[4] Fluor never concluded the project ***was*** feasible — only that it ***could be*** feasible, a materially weaker conclusion that Ramaco stripped of its qualifications before repeating it to the market as an unconditional fact. ¶¶ 66-67, 84.

[5] *In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("Courts in this Circuit have held that a company's purported risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized.").

The Challenged Statements Are Independently Actionable. Ramaco's statements are not forward-looking merely because they described expected results. Courts have rejected that characterization even for statements about meeting a development schedule. *In re iDreamSky Tech. Ltd. Sec. Litig.,* 236 F. Supp. 3d 824, 833 (S.D.N.Y. 2017) (holding statements projecting a launch date were actionable where defendants allegedly knew of delays affecting the launch). Nor does Defendants' strategic use of "we believe" shield statements that omitted material facts and were not based on any "meaningful ... inquiry." *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 41 (2d Cir. 2024). Further, "misrepresentations of existing facts" about Ramaco's most important—and sole—project are not puffery. *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 190–91 (S.D.N.Y. 2010).

***Plaintiffs Sufficiently Allege Scienter.*** The Individual Defendants were personally involved in the Brook Mine project (¶¶ 218-19) and thus "knew facts or had access to information suggesting that their public statements were not accurate." *Bishins v. CleanSpark, Inc.*, 21 CV 511 (LAP), 2023 WL 112558, at \*10 (S.D.N.Y. Jan. 5, 2023). For example, Defendant Sussman personally endorsed the financial model—including scandium pricing—that Defendants later conceded was baseless. ¶¶ 85, 198. Even after the SEC questioned the basis of statements that the project was "technically and economically viable," Defendants repeated them. ¶¶ 134, 227. Moreover, Defendants Atkins and Woloschuk—who was hired specifically to manage the project—told investors on August 1, 2025, that Ramaco would "begin pilot plant *operations*" that fall, but Ramaco didn't have a necessary engineering report, or even hire a design vendor, until October. ¶¶ 113, 116, 118, 160, 166. In addition, Defendants had a motive to mislead investors in order to supercharge Ramaco's Class Period capital-raising, which jumped from $100 million during previous 8 years to over $600 million in less than 4 months. ¶¶ 9, 221. Defendants' misstatements had a "unique connection" to capital-raising for the Brook Mine specifically, supporting scienter. *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 201 (2d Cir. 2009) (motive to raise capital can establish scienter if directly connected to corporate transaction); *see also Meyer v. Concordia Int'l Corp.*, No. 16 CIV. 6467 (RMB), 2017 WL 4083603, at \*6 (S.D.N.Y. July 28, 2017) (motive to inflate stock effect transaction sufficiently alleged). A strong inference of Defendants' scienter is bolstered by insider sales and Defendant Atkins's prior misconduct enriching himself at investors' expense. ¶¶ 222-26.

***Plaintiffs Sufficiently Allege Loss Causation.*** The AC provides "notice of what the relevant economic loss might be and what the causal connection might be between that loss and the misrepresentation." *Bishins*, 2023 WL 112558, at \*12. The Wolfpack Report and other expert analyses did not "simply publish[] already-known information," but contained "analysis of how and why [Ramaco's] underlying business was weaker than most people realized." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM) (RWL), 2019 WL 3001084, at \*17 (S.D.N.Y. July 10, 2019). Courts regularly hold that "third party analyses of previously public information could be sufficient to plead loss causation." *Bishins*, 2023 WL 112558, at \*12 (collecting cases). Defendants concede that the Wolfpack Report included new information, Ltr. at 3, which revealed the falsity of misstatements concerning scandium, mining activity, and the pilot plant, leading to a 9.6% stock drop. ¶¶ 151-56. Defendants rely on *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512-13 (2d Cir. 2010), but that case "concerned a motion for summary judgment." *Bishins*, 2023 WL 112558, at \*12. Further, loss causation does not require "admissions of fraud." *Cf.* Ltr. at 3.

Hon. Edgardo Ramos
July 21, 2026
Page 4

Respectfully submitted,

*s/Andrea Farah*
Andrea Farah

cc: All counsel of record (via ECF)